IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM SPRING                  :    CIVIL ACTION
                                :
            v.                  :
                                :
SEALED AIR CORP.                :
d/b/a CRYOVAC, INC.             :    NO. 10-4655

MEMORANDUM

McLaughlin, J.                          September 21, 2011

This lawsuit arises from William Spring's employment with Cryovac, Inc. ("Cryovac"). In early December of 2008, the plaintiff missed three days of work following an injury. He was suspended from his job upon his return and then terminated in January of 2009. The plaintiff alleges that these actions by Cryovac were either an interference with or a retaliation for his absence on those three days taken pursuant to the Family and Medical Leave Act ("FMLA").

The defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The Court will grant the defendant's motion.


I.   Summary Judgment Record

The facts presented here are undisputed unless otherwise noted. Disputed facts are read in a light most favorable to the plaintiff, the nonmoving party. See Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 n.12 (3d Cir. 2010).

A.   <u>The Defendant's Discipline and Safety Policy</u>

Cryovac is a manufacturer of protective packaging materials, among other things.  At the Reading, Pennsylvania plant where the plaintiff worked, the defendant employs a progressive discipline policy.  Employees generally receive a written warning, a notice of suspension, and then are terminated.  The defendant, however, reserves the right to skip steps if necessary.  Def's Stmt. of Undisputed Facts ("Def.'s Stmt.") ¶ 1; Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Homa Dep. ("Homa Dep.") 45:11-46:2.

The defendant has written plant safety rules.  Rule number three states: "All injuries, no matter how minor must be immediately reported to the Department Supervisor."  While employed at Cryovac, the plaintiff was aware of the written rules and had been told orally about the reporting policy.  In August of 2008, a Cryovac employee, Hong Nguyen, was terminated for failing to report a workplace injury.  Pl.'s Resp., Spring Dep. ("Pl. Dep."), Ex. 6.; Pl. Dep. 101:1-102:13; Pl.'s Resp., Weaver Dep.("Weaver Dep.") 9:11-14, 13:2-21, 18:19-19:2.


B.   <u>The Plaintiff's Injury and Absence from Work</u>

The plaintiff was employed as a full-time bundler operator by the defendant from November 14, 1988, until his termination on January 2, 2009.  The plaintiff's job required him

to stack and bundle styrofoam trays.  Pl. Dep. 7:24-8:6, 90:23-91:19.

The plaintiff was working at the defendant's plant on Wednesday, November 26, 2008.  During that day, he injured his lower back.  Nonetheless, the plaintiff worked until the end of his shift.  During his shift on November 26, the plaintiff informed two co-workers, Susan Karner and Scott Nguyen, that he was experiencing back pain.  At that time, the plaintiff did not inform any other employees that he had injured his back.  Pl. Dep. 32:25-33:22, 42:7-12.

The defendant was closed for business on Thursday, November 27, and Friday, November 28, due to the Thanksgiving Holiday.  On Friday, November 28, the plaintiff visited his primary care physician, Dr. Ronald Newman.  Dr. Newman diagnosed the plaintiff with "acute lower back pain and a muscular strain." Dr. Newman prescribed medications and recommended that the plaintiff stay out of work.  Id. 42:16-22, 44:5-12, 47:10-48:17; Def's Stmt. ¶ 18; Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts ("Pl.'s Stmt. Resp.") ¶ 18.

On November 30, 2008, the plaintiff was scheduled to work four hours of overtime at Cryovac.  The plaintiff went to work and tried, but was unable, to find another employee to cover his shift.  The plaintiff spoke with Rick Gruber, a supervisor in charge of scheduling shifts.  The plaintiff informed  Gruber that

his back was injured, but did not tell Gruber that he been injured at Cryovac.  The plaintiff worked his scheduled four hours of overtime on November 30.  Pl. Dep. 47:7-50:6.

On Monday, December 1, 2008, the plaintiff suffered an adverse reaction to one of the medications prescribed by Dr. Newman.  The plaintiff called Dr. Newman's office and was given a new prescription and "pulled" from work by Dr. Newman.  Id. 54:15-55:22.

The plaintiff was scheduled to work on December 1, 2, and 3, but did not appear because of his injury. On December 1, the plaintiff called to inform his employer that he would not appear at work.  He first spoke with Cryovac employee Hipolito Omedah and then Robert Blackton, the plaintiff's shift supervisor.  On December 2, the plaintiff again called the defendant and spoke with Blackton.  Pl. Dep. 56:1-57:4.

On the morning of December 3, 2008, the plaintiff was released by Dr. Newman to return to work.  The plaintiff called Robin Nagle, an employee in the defendant's human resources department, to inform her that he would be returning to work the next day, December 4.  The plaintiff and Nagle discussed the plaintiff's need for paperwork to designate the three day absence he had taken as leave under the FMLA.  The plaintiff was planning to return to work and was not seeking any additional leave after December 3.  Pl. Dep. 18:6-20:11, 80:3-10, 89:19-23; 90:11-22.

Pl. Dep., Ex. 1.; Nagle Dep. 22:6-23:16.

On the afternoon of December 3, the plaintiff traveled to the defendant's plant to deliver the documentation releasing him to return to work.  The note from Dr. Newman originally identified the plaintiff's condition as "not work related."  The plaintiff called Dr. Newman's office to request the note be changed and the doctor's office faxed another note to the defendant on December 3 stating the condition was work-related. Nagle Dep., Exs. 2, 6.; Pl. Dep. 65:4-66:3.

At Cryovac, the plaintiff met first with Nagle.  After speaking with the plaintiff, Nagle contacted Robert Weaver, the plant training and safety supervisor, because the plaintiff had suggested that he may have been injured at work.  Weaver then investigated whether the plaintiff had reported a workplace injury in accordance with company policy.   He spoke with Hipolito Olmeda and Jim Zaorski, who logbooks indicated had spoken with the plaintiff on December 1 and 2, respectively. Both reported to Weaver that the plaintiff had not told them of a workplace injury.  Weaver Dep. 34:10-13, 37:4-38:16, 40:20-42:15; Nagle Dep. 40:12-44:10; Pl. Dep. 26:22-27:6.

The plaintiff then met with Weaver, Blackton, and George Homa, the plant's production manager.  During the meeting, Weaver asked the plaintiff if he had reported the injury on November 26 to anyone.  The plaintiff responded that he had not

5

reported the injury to a supervisor.  In his handwritten chronology of the events made for his own records, the plaintiff states: "One of his questions was did I report my injury to anyone.  I told him that I said something [to] Susan and that was it.  He asked me if reported it to anyone else and I said no." Nagle Dep. 84:1-13; Pl. Dep. 78:23-80:18; Pl. Dep., Ex. 4 at 3; Weaver Dep. 50:4-14, 74:13-75:5; Homa Dep. 12:15-21, 32:6-18, 107:20-108:7.

The plaintiff now contends that he informed the defendant when he called on December 1 and 2 that he had suffered a workplace injury.  The plaintiff testified during his deposition that on December 1 he informed Omedah and Blackton, as well as Robin Nagle, an employee in the defendant's human resources department that he was injured at work on November 26. Id. 55:23-57:4,  58:8-60:19, 64:6-8.  The defendant argues that none of these employees were made aware of the plaintiff's workplace injury.  Pl.'s Resp., Nagle Dep. ("Nagle Dep."), Ex. 14; Blackton Dep. 49:22-50:18.[1]

After the plaintiff admitted that he had violated the defendant's reporting policy, Homa suspended the plaintiff

---

[1]	As discussed in more detail later, this dispute does not raise a genuine issue of material fact because no reasonable factfinder could conclude that the two date discrepancy, especially given the plaintiff's admission during the meeting on December 3 that he violated company policy, affects the outcome of the suit.

pending a further investigation into the policy violation.  Homa Dep. 32:19-21.

On December 4, Nagle sent an e-mail to several Cryovac employees, including Weaver, Blackton, Homa, Timothy Reich, the regional human resources manager, and Brian Blackford, the plant manager, documenting her discussions with the plaintiff on December 3.  This e-mail stated that on December 3 Nagle and the plaintiff discussed the plaintiff's possible designation of his absence as FMLA leave. Nagle Dep. 19:24-20:18, 32:12-33:15; Nagle Dep., Ex. 1.

On December 5, 2008, Weaver provided a report of his investigation to Homa.  Weaver concluded that the plaintiff "did not follow proper company procedure in reporting a work related injury even though he had opportunities specifically with 3 Supervisors and 4 Technicians over a 7 day period to do so." This report also included the information that the plaintiff contacted Nagle "to request Leave of Absence paperwork."  Weaver Dep. 69:4-9; Nagle Dep., Ex. 14.

Some time in December of 2008, while the plaintiff remained on suspension, Homa received a recommendation from Blackton that the plaintiff be terminated.  When considering this recommendation, Homa reviewed the plaintiff's overall safety and work performance history.  Homa Dep. 6:15-7:4; 81:5-17.

The plaintiff's performance record is replete with

disciplinary violations.  Specifically, in July of 2008, the plaintiff was suspended for three days for poor work performance. In May of 2008, the plaintiff receive a performance review with unsatisfactory scores in two categories: safety and attendance. Pl. Dep., Ex. 8.  (On this same evaluation, the plaintiff received above average scores in productivity and job knowledge.) In May of 2008, the plaintiff broke an air line after backing into a sleever role transport cart.  That same month he also hit and bent a bracket while backing up a vehicle.  In June of 2007, the plaintiff hit a mirror while backing up at a stationary conveyor.  In April of 2007, the plaintiff received a verbal waning for being disrespectful and disruptive at a shift safety meeting.  In March of 2007, the plaintiff was spoken to about a need to have his supplies ready.  In January of 2007, the plaintiff hit a conveyor roller, pushing it backwards.  In October of 2005, the plaintiff was suspended for engaging in a confrontation with another employee.  In January of 2005, the plaintiff hit a pad machine.  The plaintiff disputes the underlying merits of two of these violations, but does not dispute that all were among violations listed in his employment record.  Pl. Dep., Ex. 7.;  Pl.'s Resp. 11.

Homa approved the recommendation to terminate the plaintiff and forwarded it to his supervisor, Blackford. Blackford reviewed the plaintiff's performance record along with

the recommendations from Weaver and Homa.  He likewise recommended that the plaintiff be terminated and informed Reich in Human Resources regarding his decision.  Def. Br., Ex. F ("Blackford Dep.") 6:6-24; 7:5-10, 62:3-11; Def. Br., Ex. I ("Reich Dep.") 11:1-2, 41:4-10.

Reich drafted an e-mail explaining the reasons given by Weaver, Homa, and Blackford for plaintiff's termination.  The e-mail said in part that "Mr. Spring alleged an accident occurred on November 26,2008 [sic] but he never reported anything about this 'accident' until December 3, 2008. . . . Because of his long history of safety issues, as well as his numerous counsellings [sic] and progressive discipline history, the Reading management group is recommending termination at this time."  This recommendation was sent to Reich's supervisor, David Burford, for approval.  The recommendation made no mention of FMLA leave. Blackford Dep., Exs. 1, 2.

On January 2, 2009, George Homa called the plaintiff and informed him that he was being terminated.  Homa Dep. 28:19-29:1; Pl. Dep. 8:4-6 129:1-11.


C.    The Plaintiff's Prior Use of FMLA Leave

Prior to December of 2008, the plaintiff had exercised his rights under the FMLA several times while employed at Cryovac.  The plaintiff took FMLA leave from January 5 to 29,

9

2007.  In 2005, the plaintiff took five weeks of FMLA leave from May 25 to July 6 for hip replacement surgery.  The plaintiff also took FMLA leave in 2005 from April 19 to 25.  Finally, the plaintiff took FMLA leave in March of 2004.  The plaintiff does not allege adverse treatment in relation to any of these prior exercises of FMLA rights.  Def's Br., Ex. E, Aff. of Robin Nagle ¶ 3;  Pl. Dep. 10:13-11:16.

## II.  Analysis[2]

The Family and Medical Leave Act of 1993 guarantees eligible employees "a total of 12 workweeks of leave during any 12-month period" for a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  At the end of medical leave, the employee is entitled

---

[2]     A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be satisfied by demonstrating the party who bears the burden of proof lacks evidence to support his case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making its determination, the court must consider the evidence in a light most favorable to the nonmoving party. Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 n.12 (3d Cir. 2010). Once a properly supported motion for summary judgment is made, the burden of production then shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. Liberty Lobby, Inc., 477 U.S. at 250.

to be restored to his former position or to an equivalent position, and to retain employment benefits accrued prior to the leave.  29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)-(2).

The United States Court of Appeals for the Third Circuit has recognized two separate theories of recovery to address an employer's violation of the FMLA.  An employee may assert a claim for "interference" under section 2615(a)(1) of the Act, which provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."  To assert an interference claim, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them."  Callison v. City of Phila., 430 F.3d 117, 119-20 (3d Cir. 2005); 29 U.S.C. § 2615(a)(1).

The second cause of action recognized under the FMLA is a "retaliation" (also called a "discrimination") claim.  A retaliation claim arises under section 2615(a)(2) of the Act, which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."  To establish a retaliation claim, an employee must demonstrate: (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the invocation of his rights.  Erdman v. Nationwide Ins. Co., 82 F.3d

11

500, 508-09 (3d Cir. 2009); 29 U.S.C. § 2615(a)(2).  The Court of
Appeals has held that terminating an employee for requesting or
taking FMLA leave can constitute either interference or
retaliation.  Id. at 509; 29 C.F.R. § 825.220(c).

The plaintiff asserts claims under both theories and
the defendant argues that it is entitled to summary judgment on
both.  The Court agrees and will grant summary judgment on both
claims.


A.   The Plaintiff's Interference Claim

An FMLA interference claim requires the plaintiff to
show two elements: First, that he was entitled to benefits under
the FMLA.  Callison, 430 F.3d at 120. The parties do not dispute
the plaintiff's eligibility for FMLA benefits.  Pl.'s Resp. 10;
Def. Br. 13.

The second element of an interference claim requires
the plaintiff to show that he was denied available benefits.
Callison, 430 F.3d at 120.  The "employer cannot justify its
actions by establishing a legitimate business purpose for its
decision."  Id. at 119-120.  An interference claim does not
require discriminatory intent by the employer.  Sommer v.
Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006).  The only
question under an interference analysis is whether the defendant
interfered with the plaintiff's exercise of a right or benefit to

12

which he was entitled.  Callison, 430 F.3d at 119.

The FMLA, however, does not entitle an employee to "a right, benefit, or position" to which he would not "have been entitled had the employee not taken the leave." 29 U.S.C § 2614(a)(3)(B).  An employer is not liable under the FMLA for terminating an employee during or at the end of the employee's FMLA leave when the reason for termination is not related to the employee's use of the FMLA.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 148 (3d Cir. 2004); Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007) ("[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA.").

The defendant argues that the plaintiff was suspended because he violated company safety rules and terminated because of past performance concerns.  The plaintiff argues that he exercised his rights under the FMLA when he missed three days of work and the defendant suspended and then terminated him because of that exercise.

The plaintiff understood that company policy required him to report workplace injuries to a supervisor and yet he did not immediately report an injury he suffered at Cryovac on November 26.  Instead, the plaintiff first informed Cryovac of his injury in early December.  When the defendant investigated the plaintiff's injury, the plaintiff admitted that he had not

13

reported this injury to a supervisor.  The plaintiff's handwritten chronology and deposition testimony confirm that he admitted at the December 3 meeting that he violated the policy. The plaintiff now argues that he informed his employer of the workplace injury on December 1 instead of December 3, but this factual dispute is not material to defendant's reason for suspending and terminating the plaintiff.  Accepting as true the plaintiff's contention that Cryovac was aware on December 1 of the workplace injury, the plaintiff still violated the reporting policy and admitted to doing so on December 3.

In addition, the defendant conducted a lengthy recommendation and review process before the plaintiff was terminated.  At least four supervisors at Cryovac reviewed the decision to terminate the plaintiff.  The plaintiff's use of FMLA was not mentioned in any of the e-mails or memoranda recommending termination, nor is there evidence it was discussed or considered by these decision makers.  Of course, given the nature of the workplace violation, the December 4 Nagle e-mail, and the Weaver report, the decision makers in this process must have been aware that the plaintiff had recently been absent for three days.  But the plaintiff has adduced no other evidence linking the adverse employment decisions to the plaintiff's use of his FMLA rights.

The Court concludes that no reasonable jury could conclude that the plaintiff's use of FMLA leave played a part in

the decision by the defendant to suspend and then terminate the plaintiff.  Given the plaintiff's admitted policy violation and record of performance issues and safety violations, no reasonable jury could conclude that the defendant based its decision on the plaintiff's use of three days of FMLA leave and not the non-FMLA justification of performance issues.  See <u>Sarnowski</u>, 510 F.3d at 403.


B.    <u>The Plaintiff's Retaliation Claim</u>

The plaintiff also alleges that his suspension and termination were retaliation for his use of FMLA leave.

In the Third Circuit, retaliation claims under the FMLA are analyzed quite differently than interference claims. Retaliation, or discrimination, claims are analyzed under the legal framework established for Title VII discrimination claims. Where only indirect evidence of discrimination is offered, as in this case, the claim is analyzed pursuant to the burden shifting regime established by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).[3]  <u>Naber v. Dover Healthcare Associates, Inc.</u>, 765 F. Supp. 2d 622, 633 (D. Del. 2011); <u>Atchison v. Sears</u>, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009).

---

[3]    The parties agree that the plaintiff has offered only indirect evidence of discrimination and that the burden shifting framework of <u>McDonnell Douglas</u> should apply.  Pl.'s Resp. 13; Def. Br. 16-17.

15

A plaintiff can establish a prima facie case of FMLA retaliation by demonstrating that: (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the invocation of his rights.  Erdman v. Nationwide Insurance Co., 582 F.3d 500, 508-09 (3d Cir. 2009).

The parties agree that the first two elements are satisfied but dispute the third element, whether the plaintiff's termination and suspension were causally related to the invocation of his FMLA rights.  The defendant argues that the plaintiff has not demonstrated a prima facie case because the plaintiff can only "speculate" based on the timing of his termination that there is a causal relationship between his FMLA leave and his termination.  The plaintiff argues that his suspension on the same day that he attempted to return to work from leave and hours after he requested FMLA paperwork is enough to raise an inference of causation.

The plaintiff relies on the temporal proximity of his suspension to his use of FMLA leave to meet his prima facie case.  Unless the timing is "unusually suggestive" of a causal link, temporal proximity, standing alone, is insufficient to establish causation.  Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997).  Given the timing of the plaintiff's absence, his request to designate that leave as FMLA leave, and his

suspension and subsequent termination, the Court will assume that the plaintiff has made out a prima facie case.

Once the plaintiff has established a prima facie case, a rebuttable presumption of unlawful retaliation arises, and the burden of production (but not persuasion) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  This burden is "relatively light: it is satisfied if the defendant articulates any legitimate reason" for the adverse action.  Krouse, 126 F.3d at 500-01; see McDonnell Douglas Corp., 411 U.S. at 802-03.

The defendant argues that the plaintiff was suspended and subsequently fired because of his violation of Cryovac's performance and safety standards.  The defendant has met its light burden to articulate a legitimate nondiscriminatory reason for its actions.

Because the defendant has met its burden of production, the plaintiff must point to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see McConnell Douglas, 411 U.S. at 802.

To "avoid summary judgment, the plaintiff's evidence

17

rebutting the employer's proffered legitimate reasons must allow
a factfinder reasonably to infer that <u>each</u> of the employer's
proffered non-discriminatory reasons . . . was either a <u>post hoc</u>
fabrication or otherwise did not actually motivate the employment
action." <u>Fuentes</u>, 32 F.3d at 764.  These two tests are the ways
in which the plaintiff can prove that the defendant's offered
reason is mere pretext.  The Court concludes that the plaintiff
is unable to meet his burden of proving pretext using either
test, and therefore cannot prove a retaliation claim.

    Regarding the first pretext test, a plaintiff cannot
discredit the employer's proffered reason by showing the
defendant was "wrong or mistaken."  Rather, the plaintiff must
"demonstrate such weaknesses, implausibilities, inconsistencies,
incoherencies or contradictions" that a reasonable factfinder
could rationally find the employer's offered reason was "unworthy
of credence" and not the true motivation for the employer's
decision.  <u>Fuentes</u>, 32 F.3d at 765.

    The plaintiff argues that the defendant's proffered
reason should be discredited because Cryovac's policy requiring
immediate notification to supervisors of workplace injuries
violates section 331, the notice provision, of the Pennsylvania
Workers' Compensation Act, 77 Pa. Stat. Ann. § 631 (West 2002).
The plaintiff further argues that because the policy requires
employees to notify the company of every small injury, the

defendant's policy is impractical and inconsistent with public policy.  Pl.'s Resp. 14-15; Tr. of Hr'g 8/31/11 20:14-21:6.

The defendant's policy does not violate section 331 of the Pennsylvania Worker's Compensation Act.  That section provides that no workers' compensation shall be paid unless an employee reports a workplace injury to his employer within 120 days of the occurrence of the injury.  77 Pa. Stat. Ann. § 631. Pennsylvania courts have held that the purpose of section 331 is to "protect the <u>employer</u> from stale claims for injuries" made after the opportunity for a "full and complete investigation" had passed. Storer v. W.C.A.B. (ABB), 784 A.2d 829, 832-33 (Pa. Commw. Ct. 2001) (emphasis added); see Katz v. Evening Bulletin, 485 Pa. 536, 539 (1979) ("The notice provisions of the Act permit an employer to investigate claims while the events in question are still recent [and also] warn[s] an employer of dangerous employment conditions [to] facilitate their speedy correction."). There is no indication in the text of the statute, nor in case law, that the provision extends beyond workers' compensation claims.

If anything, the defendant's workplace injury notification policy requirement seems in conformity with the purpose of the Act.  The policy gives Cryovac prompt notice of an injury so it can conduct a full investigation while the events are recent and so it can correct dangerous conditions.  Even if

Cryovac's policy violated the Act, that does not demonstrate such weaknesses, implausibilities, or inconsistencies that a reasonable factfinder could conclude that the defendant's offer reason is unworthy of credence.  A policy may be invalid under state law but nonetheless the motivating force for an employer's actions.

As to the plaintiff's second argument, it is not the role of the jury to determine the business acumen of defendant.  The factual dispute is only whether "discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).  The plaintiff argues that he acted reasonably in notifying the defendant within five days of his injury.  The plaintiff hoped the pain he developed on November 26 would go away within a few days without incident.  The reasonableness of the plaintiff's behavior is not at issue, however.  The plaintiff was aware of the reporting policy and admitted to his employer that he violated the policy.  The wisdom and reasonableness of the policy or the plaintiff's choice not to comply with it is not at issue.

Although not specifically raised by the plaintiff, the Court considers whether the factual dispute regarding when the defendant was made aware of the plaintiff's injury raises a triable issue on pretext.  Accepting as true that the plaintiff

made the defendant aware of his workplace injury on December 1, he could argue that the defendant's delay in taking disciplinary action until December 3, after his use of FMLA leave, is evidence that the policy violation was mere pretext for the adverse action.

It is undisputed, however, that the plaintiff admitted on December 3 that he had not informed a supervisor of his injury.  The decision makers in the plaintiff's termination considered an internal investigation which indicated that the plaintiff had not informed anyone until December 3.  They also considered the plaintiff's employment history which included numerous safety and performance issues.  The fact that the defendant may have been mistaken about when it was informed of the plaintiff's policy violation does not raise "inconsistencies, incoherencies or contradictions" in the defendant's proffered reason which would make a reasonable factfinder question the credence of the defendant's reason.  <u>Fuentes</u>, 32 F.3d at 675.

With regard to the second pretext test, the plaintiff must "point to evidence with sufficient probative force for a factfinder to" conclude that discrimination was more likely than not a motivating factor in his employer's decision. <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 644-45 (3d Cir. 1998) (internal quotations omitted).  Examples of evidence with sufficient probative weight include prior discrimination

against the plaintiff, prior discrimination against other persons exercising the same right as the plaintiff, or more favorable treatment of other employees not exercising the same right. Id.

The plaintiff offers no evidence of past discrimination against him for use of FMLA leave.  In fact, the plaintiff took FMLA leave from the defendant numerous times before December of 2008 without any incident.  No discrimination before or after any of these exercises of FMLA rights is alleged.

Nor does the plaintiff present evidence that other employees at Cryovac who exercised rights under the FMLA were subject to discriminatory treatment.  The plaintiff offers no evidence that employees who did not use FMLA were treated differently than the plaintiff and no evidence of other employees who violated the same or similar policies but were not terminated from Cryovac.  However, the defendant offers uncontradicted evidence that another employee was terminated in August for violating the same policy.

Instead, the plaintiff relies upon Barron v. Quest Diagnostics to argue that the discrimination was more likely than not a motivating factor in the defendant's decision to terminate him.  No. 09-1247, 2010 U.S. Dist. LEXIS 17901 (E.D. Pa. Mar. 1, 2010).  In Barron, an employee was terminated one work day after she returned from FMLA leave.  The defendant's proffered nondiscriminatory reason for her termination was her repeated

22

lateness for several months prior to her termination.  The district court held that the plaintiff was able to raise a triable issue on pretext, because she was eligible for termination before her use of FMLA leave but was not terminated until after she had exercised that right.  The plaintiff argues that like the employee in <u>Barron</u>, he was not terminated following any of the many disciplinary events on his employment record. Instead, he was terminated following his use of FMLA leave. <u>Barron</u>, 2010 U.S. Dist. LEXIS 17901, at *10, *22, *26-27.

However, <u>Barron</u> is distinguishable from this case.  In <u>Barron</u>, there were specific events which occurred only prior to the plaintiff's exercise of FMLA leave which did not result in her termination.  More importantly, in <u>Barron</u>, the purported reason for termination occurred before the employee's FMLA leave and yet the employee was fired only after the FMLA leave.  In addition, the decision makers offered inconsistent testimony about the timing and reasons for the decision to terminate the employee.  <u>Barron</u>, 2010 U.S. Dist. LEXIS 17901, at *24-*26.

Here, the decision makers at Cryovac relied on the plaintiff's policy violation, which they learned of after his return from leave, and history of performance issues as the reason for his suspension and termination.  Internal e-mails and memoranda recommending the plaintiff's termination document this justification and make no mention of the FMLA leave. No decision

maker has offered inconsistent testimony about the reasons for the plaintiff's suspension and termination.

Because the plaintiff has raised no genuine issue of material fact to persuade a reasonable jury that the defendant's nondiscriminatory reason was merely pretext, the defendant is entitled to summary judgment on the retaliation claim.

An appropriate order shall issue separately.